1 | Vanessa R. Waldref
United States Attorney
2 | Eastern District of Washington
Dan Fruchter
3 | Assistant United States Attorney
4 | Post Office Box 1494
Spokane, WA 99210-1494
5 | Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 1 4 2024

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

6

7 | UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

8

9 | UNITED STATES OF AMERICA,

10 |                     Plaintiff,

2:24-CR-00042-TOR

11 |          vs.

PLEA AGREEMENT

12

13 | LUKE MICHAEL SERVAS,

14 |                     Defendant.

15

16

Plaintiff, United States of America, by and through Vanessa R. Waldref, United

17 | States Attorney for the Eastern District of Washington and Dan Fruchter, Assistant

18 | United States Attorney and Defendant LUKE MICHAEL SERVAS (hereinafter

19 | "Defendant") and Defendant's counsel, J. Gregory Lockwood, agree to the following

20 | Plea Agreement:

21 |          1.     Guilty Pleas and Maximum Statutory Penalties:

22 |          Defendant, LUKE MICHAEL SERVAS, agrees to plead guilty to Count 26 of

23 | the Indictment returned by the Grand Jury on January 18, 2024, charging Defendant

24 | with Bank Fraud in violation of 18 U.S.C. § 1344(2), a Class B felony.  Defendant

25 | understands that the following potential penalties apply:

26 |          (a)     not more than a 30-year term of imprisonment;

27 |          (b)     not more than a 5-year term of supervised release;

28

Plea Agreement- 1 of 21

(c)    a fine not to exceed $1,000,000;

(d)    restitution; and

(e)    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>The Court is Not a Party to the Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Inadmissibility of Statements</u>

Pursuant to Federal Rule of Criminal Procedure 11(f), Defendant waives the inadmissibility of any statements made by Defendant in the course of plea discussions with the United States. This waiver shall apply if Defendant withdraws Defendant's guilty plea or breaches this Plea Agreement. Defendant acknowledges that any statements made by Defendant in the course of plea discussions in this case will be

admissible against Defendant in the United States' case-in-chief if Defendant withdraws from, or breaches, this Plea Agreement, in any manner.

6.    Waiver of Constitutional Rights:

Defendant understands that by entering his pleas of guilty, Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a)    The right to a jury trial;

(b)    The right to see, hear, and question the witnesses;

(c)    The right to remain silent at trial;

(d)    The right to testify at trial; and

(e)    The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands he retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney. Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.    Elements of the Offense:

The parties agree that, in order to convict Defendant of Bank Fraud, in violation of 18 U.S.C. § 1344(2), as charged in Count 26, the United States would have to prove beyond a reasonable doubt the following elements:

- <u>First</u>, between on or about October 6, 2022, and on or about March 20, 2023, in the Eastern District of Washington and elsewhere, Defendant LUKE MICHAEL SERVAS knowingly carried out a scheme or plan to obtain money or property from STCU, a financial institution, by making false or fraudulent statements;

- <u>Second</u>, Defendant knew that the statements or promises were false or fraudulent;

-     <u>Third</u>, the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;
-     <u>Fourth</u>, Defendant acted with the intent to defraud; and
-     <u>Fifth</u>, STCU was federally chartered or insured.

8.    <u>Factual Basis and Statement of Facts:</u>

The parties stipulate and agree that the United States could prove the following facts beyond a reasonable doubt at trial, and these facts constitute an adequate factual basis for Defendant's guilty pleas. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Cusick is a small municipality located in Pend Oreille County in the Eastern District of Washington. To ensure issues impacting the operation and maintenance of Cusick are effectively managed, Cusick elects a town council comprised of members considered to be trustworthy by the community. Like many municipalities, Cusick appoints a town councilmember or other trusted individual as the town clerk. Cusick's town clerk is obligated to keep true and accurate records of city council accounts and proceedings, and to generate reports as required by the state auditor under state law. Throughout all relevant time periods, Cusick's town council managed and maintained a Town of Cusick operating bank account at Spokane Teachers' Credit Union (STCU) with account number ending in 9869. STCU is a federally insured financial institution, the deposits of which are insured by the National Credit Union Administration.

Funds entering Cusick's operating town bank account originate from numerous sources, while the account's outgoing expenses relate to town maintenance, necessary public services, and other legitimate public expenditures. During the relevant time period, two Town of Cusick credit cards issued by STCU were linked to and used

Cusick's operating bank account: one in the name of the mayor, and one in the name of the town clerk. Cusick's mayor and town clerk utilized these credit cards for authorized expenses related to their duties in their official capacity as elected and appointed Town of Cusick personnel.  During the relevant time period, the Town of Cusick's STCU operating bank account was managed by the town council, with the town clerk acting as the account's official custodian and having access to the Town of Cusick's STCU operating bank account in order to perform his duties and responsibilities with respect to the Town's finances and obligations.

Between October 2022 and March 2023, Defendant served as the Town of Cusick's appointed clerk, responsible for the town's operating bank account, accounting services, and bookkeeping services.  During this time period, Defendant had access to the Town of Cusick's operating bank account, town credit cards, and other financial accounting records and information. While Defendant had limited purchase authority on behalf of the Town of Cusick relative to his legitimate duties as town clerk as well as his own credit card drawing off of the town's operating account to be used for legitimate public expenses and within his authority, Defendant LUKE MICHAEL SERVAS was not permitted lawful access to the Town of Cusick mayor's credit card, which was issued in the mayor's name and signature for his use alone.

During the relevant time period, Defendant operated a PayPal account entitled LMSERVAS with account number ending in 6878. PayPal is an internet-based peer-to-peer money transfer application.  During the relevant time period, Defendant operated a cryptocurrency account operated by Uphold HQ, Inc., with user id ending in 5d8d. Uphold HQ, Inc., is a digital money platform which offers financial services. At all times relative to the Indictment, Defendant's spouse possessed a PayPal account entitled ACOMPLEX444 with account number ending in 2018, to which Defendant had access and control.

### Defendant's Fraud Scheme

Between October 2022 and March 2023, Defendant did knowingly, and with the intent to defraud, devise a scheme and plan to defraud the Town of Cusick using the interstate wires, and to obtain money and property belonging to the municipality and in the possession, control, and custody of STCU, by means of materially false and fraudulent pretenses, representations and promises, and by fraudulently converting Town of Cusick public funds to his own use and control.  As a part of the scheme, beginning no later than on or about October 6, 2022, and until at least on or about March 20, 2023, using his access to the Town of Cusick's accounts and checks, Defendant, without authority, and through use of the interstate wires, fraudulently caused funds to be transferred and converted from the Town of Cusick's operating bank account at STCU to accounts owned and controlled by Defendant, including Defendant's PayPal account with account number ending in 6878 that he owned and controlled, as well as his spouse's PayPal account with account number ending in 2018.

As a part of the scheme, in October 2022, Defendant fraudulently obtained access to and use of a credit card in the name of D.S., then the Town of Cusick Mayor, which account was connected to the town's STCU operating account.  Defendant obtained access to D.S.'s Town of Cusick STCU credit card by intercepting it in the mail and activating it without D.S.'s authorization. Defendant activated and used D.S.'s Town of Cusick credit card without the knowledge or permission of D.S., and without any legitimate purpose or lawful authority.  Defendant then used D.S.'s Town of Cusick credit card to transfer Town of Cusick funds from the Town of Cusick's STCU operating account to accounts that Defendant and his spouse owned and controlled.

As a part of the scheme, beginning in October 2022, and continuing until March 2023, Defendant transferred funds from the Town of Cusick operating bank account at STCU with account number ending in 9869 to D.S.'s Town of Cusick STCU credit

card account number ending in 4518 and to the town clerk credit card account at STCU in Defendant's name with account number ending in 4906. Defendant then used his access to Cusick's operating bank account, D.S.'s Town of Cusick credit card account, and his own Town of Cusick credit card account, to, without lawful authority, fraudulently transfer funds from Town of Cusick STCU accounts to his PayPal account with account number ending in 6878 that he owned and controlled, and to his spouse's PayPal account with account number ending in 2018, as well as to Defendant's Uphold cryptocurrency account with user id ending in 5d8d that he owned and controlled, all using interstate wires.

Defendant used D.S.'s Town of Cusick credit card for many of the transactions to conceal the fraud and make it appear as though the mayor was the individual responsible for embezzling the funds. Defendant completed these fraudulent transfers via transfers made from the Town of Cusick's operating account to "prepay" D.S.'s Town of Cusick's credit card account, and then subsequently transferring funds using D.S.'s Town of Cusick credit card account to Defendant's and his spouse's PayPal accounts.

On or about March 7, 2023, after other public officials expressed concern that significant funds were missing, Defendant contacted the Pend Oreille County Sheriff's Office (hereinafter "POCSO") to report that between $150,000 and $200,000 had been fraudulently stolen from the Town of Cusick's operating bank account. Defendant falsely and fraudulently told POCSO that the money had been stolen using D.S.'s Town of Cusick credit card account and that only D.S., the mayor, had access to the use of that card. Defendant did this to obscure the fraud and mislead law enforcement.

In total, between on or about October 6, 2022, and until at least on or about March 3, 2023, Defendant, in the manner described above, fraudulently obtained at least $190,752.12 from the Town of Cusick's STCU operating account with account number ending in 9869, using interstate wires to consummate hundreds of fraudulent

transactions for which he had no legal authority or legitimate public purpose, including:

- fraudulent transfers from the Town of Cusick's STCU operating account ending in 9869 to D.S.'s Town of Cusick credit card account with account number ending in 4518. Between October 6, 2022 and February 27, 2023, Defendant then, without lawful authority or legitimate purpose, used D.S.'s Town of Cusick credit card to make hundreds of transfers to two PayPal accounts, Defendant's spouse's PayPal account ACOMPLEX444 with account number ending in 2018, and Defendant's own account LMSERVAS with account number ending in 6878. In this manner, Defendant fraudulently converted to himself at least $174,227.00 in Town of Cusick public funds.

- fraudulent transfers from the Town of Cusick's STCU operating account with account number ending in 9869 transferred to Defendant's own Town of Cusick credit card account at STCU ending in account number 4906. Between December 5, 2022 and December 13, 2022, Defendant then used his own Town of Cusick credit card account ending in 4906 to make purchases to Defendant's PayPal account LMSERVAS with account number ending in 6878. In this manner, Defendant, without legal authority or legitimate public purpose, fraudulently converted to himself at least $10,559 in Town of Cusick public funds.

- fraudulent transfers from the Town of Cusick's STCU operating account with account number ending in 9869 transferred to Defendant's own Town of Cusick credit card account ending in account number 4906. Between December 5, 2022 and December 13, 2022, Defendant then used his own Town of Cusick credit card

account ending in 4906 to make transfers to Defendant's Uphold cryptocurrency account with user id ending in 5d8d. In this manner, Defendant, without legal authority or legitimate public purpose, fraudulently converted to himself at least $5,966.12 in Town of Cusick public funds.

Additionally, as part of the scheme, on or about March 10, 2023, Defendant, without legal authority or legitimate public purpose, wrote a fraudulent Town of Cusick check for $4,961.08 to himself drawn on the Town of Cusick's STCU account ending in 9869, dated March 10, 2023, and forged D.S.'s signature on the check, as well as the signature of E.A., then a member of the Cusick Town Council who had check writing authority on behalf of the Town of Cusick.  On or about March 20, 2023, Defendant then negotiated the fraudulent and forged check to himself, fraudulently converting to himself the Town of Cusick public funds from the STCU account.

These fraudulent transfers and transactions undertaken by Defendant using Town of Cusick funds were not related to any legitimate public expense of the Town of Cusick.  Nor did Defendant have any legitimate claim or entitlement to these funds. Nor did Defendant transfer these funds relative to any legitimate expense or transaction of the Town of Cusick, or one for which he had permission, proper purpose, or lawful authority. Rather, these transactions were undertaken by Defendant in order to fraudulently and improperly convert Town of Cusick public funds to his own use.

Defendant admits that between October 6, 2022 and March 20, 2023, in the Eastern District of Washington and elsewhere, Defendant did knowingly, and with intent to defraud, execute, attempt to execute, and cause the execution of, a scheme and artifice to defraud financial institutions, including STCU, which scheme and artifice employed material falsehoods, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to

obtain moneys, funds, credits, assets, or other property owned by, and under the custody and control of financial institutions, including STCU, by means of false and fraudulent pretenses, representations, and promises, such executions including, on or about October 6, 2022, a fraudulent transfer in the amount of $257.55 from the Town of Cusick's STCU operating account using D.S's Town of Cusick STCU credit card account number ending in 4518 to PayPal account ACOMPLEX444 with account number ending in 2018.

9. The United States Agrees:

(a) To Dismiss Counts:

At the time of sentencing, the United States agrees to move to dismiss Counts 1 through 25, charging Wire Fraud, in violation of 18 U.S.C. § 1343; to dismiss Counts 27 through 51, charging Bank Fraud, in violation of 18 U.S.C. § 1344(1) and (2); and to dismiss Counts 52 through 76, charging Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), of the Indictment.

(b) Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Indictment unless Defendant breaches this Plea Agreement any time before sentencing.

10. United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing.

(a) Base Offense Level:

The parties agree and stipulate that Defendant's Base Offense Level is 7. *See* USSG § 2B1.1(a).

(b)    <u>Specific Offense Characteristics:</u>

The parties agree and stipulate that Defendant's Base Offense Level is increased by at least 10 levels for a loss greater than $150,000 but less than $250,000 pursuant to USSG § 2B1.1(b)(1)(F). The United States reserves the right to argue that the amount of loss pursuant to USSG 2B1.1(b) is greater than $250,000, and Defendant reserves the right to oppose any loss-based enhancement greater than 10 levels.

The United States believes, and intends to argue, that the Base Offense Level should be increased by 2 levels pursuant to USSG § 2B1.1(b)(2)(A) because the offense resulted in substantial financial hardship to the Town of Cusick. Defendant reserves the right to oppose that enhancement.

The United States believes, and intends to argue, that the Base Offense Level should be increased by 2 levels pursuant to USSG § 2B1.1(b)(9) because the offense involved a misrepresentation that Defendant was acting on behalf of a government agency. Defendant reserves the right to oppose that enhancement.

The United States believes, and intends to argue, that the Base Offense Level should be increased by 2 levels pursuant to USSG § 2B1.1(b)(10), because the offense conduct involved the use of sophisticated means. Defendant reserves the right to oppose that enhancement.

The United States believes, and intends to argue, that the base offense level should be increased by 2 levels pursuant to USSG § 3B1.3 because Defendant abused a position of public trust in a manner that significantly facilitated the commission or concealment of the offense. Defendant reserves the right to oppose that enhancement.

The parties have no agreement whether any other specific offense characteristics are applicable. The United States and Defendant may argue for or against any adjustments and/or enhancements under the USSG noted in the Presentence Investigation Report.

(d)    <u>Acceptance of Responsibility:</u>

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a-b), if Defendant does the following:

    i.     accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.   demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.   provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    (f)    <u>Criminal History</u>:

The parties make no agreement on Defendant's criminal history category, which shall be determined by the Court after the Presentence Investigative Report is completed.

11.   <u>Incarceration</u>:

The United States and Defendant each agree to recommend a sentence within the sentencing guideline range ultimately determined by the Court at the time of sentencing.

12.   <u>Criminal Fine</u>:

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

Plea Agreement- 13 of 21

13.   <u>Restitution:</u>

The parties agree restitution is required pursuant to 18 U.S.C. §§ 3663(a), 3663A, and 3664. Further, pursuant to 18 U.S.C. § 3663(a)(3) and 3663A(a)(3), the Defendant voluntarily agrees to pay the agreed upon restitution amount in exchange for the United States not bringing additional potential charges, regardless of whether counts of the Indictment dealing with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the parties agree to the following:

(a)   <u>Restitution Amount</u>

The parties agree that the Court should order Defendant to pay restitution to the Town of Cusick in the in the total amount of at least $195,713.20.

(b)   <u>Payments</u>

The parties agree the Court will set a restitution payment schedule based on Defendant's financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of Defendant's net monthly income toward Defendant's restitution obligation.

(c)   <u>Treasury Offset Program and Collection</u>

Defendant understands the Treasury Offset Program (TOP) collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. *See* 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

(d)    <u>Obligations, Authorizations, and Notifications</u>

The Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of the Defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office.  The parties agree that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until the fine or restitution order is paid in full, Defendant agrees to disclose all assets in which the Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F) Defendant understands and agrees that until a fine or restitution order is paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

14.    Judicial Forfeiture

The parties agree forfeiture applies. *See* 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. §§ 982(a)(2)(A), (a)(2)(B); 18 U.S.C. § 1028(b); and 28 U.S.C. § 2461(c). With respect to forfeiture, the parties agree to the following:

(a)    Forfeitable Property

The United States shall seek a forfeiture money judgment in this matter and will not seek to forfeit specific property, except as set forth in this Plea Agreement or authorized by law. The United States will not seek to forfeit proceeds in an amount exceeding what Defendant actually obtained as a result of the crime. *See Honeycutt v. U.S.*, 137 S. Ct. 1626 (2017).

(b)    Money Judgment

Defendant agrees to forfeit to the United States all right, title, and interest in the following property: a $195,713.20 money judgment, which represents the amount of proceeds Defendant obtained as a result of his illegal conduct.

(c)    Substitute Property

Defendant understands the United States may seek for Defendant to forfeit substitute property in satisfaction of the money judgment if the United States can establish the following regarding the above-described property (*i.e.*, the money judgment): a) it cannot be located upon the exercise of due diligence; b) it has been transferred or sold to, or deposited with, a third party; c) it has been placed beyond the Court's jurisdiction; d) it has substantially diminished in value; e) it has been commingled with other property and cannot be divided without difficulty. *See* 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(p). The United States will not seek to forfeit substitute

Plea Agreement- 16 of 21

property from other defendants or co-conspirators; it may only forfeit substitute property from Defendant. *See* 21 U.S.C. § 853(p).

(d)    Application of Forfeited Property to Restitution

Defendant understands the United States will seek restitution for the victim(s) in this case independent of this money judgment. It is the parties' mutual understanding that the United States Attorney's Office will seek approval to apply the proceeds of any forfeited assets to Defendant's restitution obligations. Defendant recognizes the final decision to approve this application rests with the Attorney General. *See* 18 U.S.C. § 981(d), (e); *see also* 28 C.F.R. 9 *et. seq.*

(e)    Cooperation on Forfeited Assets

Defendant agrees to cooperate with the United States in passing clear title on all forfeited assets. Defendant also agrees to assist the United States in locating any assets that 1) are the proceeds of illegal conduct (as outlined in this Plea Agreement) and 2) have not been dissipated. If such assets are located, then Defendant will stipulate to their forfeiture.

(f)    Waivers

Defendant agrees to waive oral pronouncement of forfeiture at the time of sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(B). Defendant stipulates and agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with the Plea Agreement on any grounds, including a claim that forfeiture in this case constitutes an excessive fine or punishment.

Defendant stipulates and agrees to hold the United States, and its agents and employees, harmless from any and all claims whatsoever in connection with the investigation, the prosecution of charges, and the seizure and forfeiture of property covered by this Plea Agreement.

15.    Supervised Release:

The parties agree to jointly recommend that the Court impose a 5-year term of supervised release.  The parties are free to advocate for any special conditions they believe are appropriate.

16.    Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington.  *See* 18 U.S.C. § 3013.

17.    Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, then Defendant agrees to earn the money to pay toward these obligations by participating in Bureau of Prisons' Inmate Financial Responsibility Program.

18.    Additional Violations of Law Can Void Plea Agreement:

The parties agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

19.    Waiver of Appeal

In return for the concessions that the United States has made in this Plea Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's conviction and sentence.

Defendant further expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution or forfeiture order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

20.    <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    The United States' obligations under this Plea Agreement shall become null and void;

b.    the United States may prosecute Defendant on all available charges;

c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

21.  Integration Clause:

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning this case's resolution.  This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.  The parties agree that this agreement cannot be modified except in writing that is signed by the United States and Defendant.

## Approval and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____ for          9/14/24
Dan Fruchter                          Date
Assistant United States Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreements with my attorney.  I understand and voluntarily enter into the Plea Agreement.  Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case.  No other promise or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I am guilty.

_____          14 August 24
LUKE MICHAEL SERVAS               Date
Defendant

Plea Agreement- 20 of 21

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

8-14-24

J. Gregory Lockwood                                   Date
Attorney for Defendant

Plea Agreement- 21 of 21